(C. D. 1260)

MAGNUS, MABEE & REYNARD, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 24, 1950)

*Eugene R. Pickrell* for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*Richard E. FitzGibbon, Howard L. Harawitz,* and *Richard H. Welsh,* special attorneys), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

MOLLISON, Judge: This case involves the classification status for tariff purposes of an importation of chaulmoogra oil, which is used in the treatment of leprosy. It was assessed with duty at the rate of 20 per centum ad valorem under the provision in paragraph 53 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 53) for expressed or extracted oils, not specially provided for. Three alternative claims are made in the protest filed by the plaintiff. The claim principally relied upon is for free entry under the provisions of paragraph 1669 of the same act for crude drugs. The first alternative claim is for free entry under paragraph 1732 of the act as a nut oil, not specially provided for, and the second alternative claim is for duty at the rate of 10 per centum ad valorem under the provisions in paragraph 34 of the act as a drug, advanced. While the classification made by the collector is not specifically abandoned by the defendant, nevertheless, the position assumed at the trial and in the brief filed on its behalf is directed toward classification of the merchandise under the provision in paragraph 5 of the said act for medicinal preparations, not specially provided for, with consequent assessment of duty at the rate of 25 per centum ad valorem. For convenience, the pertinent portions of the foregoing paragraphs are set forth in the margin.[1]

---

[1] PAR. 5. * * * all medicinal preparations * * * all the foregoing obtained naturally or artificially and not specially provided for, 25 per centum ad valorem.

PAR. 34. Drugs, such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, herbs, leaves, lichens, mosses, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds, and all other drugs of vegetable or animal origin; any of the foregoing which are natural and uncompounded drugs and not edible, and not specially provided for, but

There does not seem to be any question with respect to the facts as to the production of the involved chaulmoogra oil. According to the uncontradicted testimony of plaintiff's witness Kellersberger, a missionary and doctor of medicine with considerable experience on the subject, the chaulmoogra oil tree bears about 100 to 200 large, heavy, brownish fruits about the size of a grapefruit. Inside the skin or hull of the fruit is found a white pulp in which are embedded from 100 to 200 angular seeds. According to the witness, the seeds are first dried for at least a week or two, or longer, and then are cracked to get the kernel inside. The kernel is macerated and the oil extracted by means of a press, resulting in a crude, heavy oil, not a clear oil, but an oil which is partly cloudy. The witness stated that the oil so produced was similar to a sample of oil later received in evidence without objection as exhibit 2 and identified as chaulmoogra oil in all material respects the same as the imported oil.

The record establishes that because of impurities contained therein which would be deleterious to the patients, the crude oil in the form in which imported cannot be used in any manner in the treatment of leprosy until it has been purified, which is done by heating it to make it uniform in consistency and then filtering it. After such process in this country, the oil here in question conformed to United States Pharmacopoeia standards.

The record likewise establishes that there are four methods of using chaulmoogra oil in the treatment of leprosy. The first method is orally in the form of capsules of specific sizes which are filled with nothing but the purified oil. The second is by intramuscular injection. Since such injection of the purified oil alone is extremely painful and irritating, an analgesic—benzocaine—is dissolved in it. About 10 per centum of olive oil is used to aid the dissolution of the benzocaine. It was established that neither the olive oil nor the benzocaine add to or take away any of the medicinal or therapeutic properties of the chaulmoogra oil, but merely allay the pain incident to the method of injection.

which are advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture, 10 per centum ad valorem: *Provided,* That the term "drug" wherever used in this Act shall include only those substances having therapeutic or medicinal properties and chiefly used for medicinal purposes: *And provided further,* That no article containing alcohol shall be classified for duty under this paragraph.

PAR. 53. Oils, vegetable: * * * all other expressed or extracted oils, not specially provided for, 20 per centum ad valorem.

PAR. 1669. Drugs such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, herbs, leaves, lichens, mosses, logs, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds, and all other drugs of vegetable or animal origin; all the foregoing which are natural and uncompounded drugs and not edible, and not specially provided for, and are in a crude state, not advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture: *Provided,* That no article containing alcohol shall be admitted free of duty under this paragraph.

PAR. 1732. Oils, expressed or extracted: * * * and nut oils not specially provided for.

The third method is with the use of ethyl esters of the oil. There is little elaboration in the record concerning this method of treatment, which obviously involves a change in the form of the oil.

The fourth method is by the preparation of an ointment by mixing the purified chaulmoogra oil with vasoline or lanolin. It was established that the vasoline or lanolin in such use does not add to the therapeutic value of the oil.

That the imported oil is embraced within the provisions for drugs in the Tariff Act of 1930 seems clear on the record presented. Paragraph 34 contains a statutory definition of the term "drug" in the following language:

* * * *Provided*, That the term "drug" wherever used in this Act shall include only those substances having therapeutic or medicinal properties and chiefly used for medicinal purposes.

The record establishes that chaulmoogra oil such as that here involved has therapeutic or medicinal properties and is chiefly used for medicinal purposes. The record further establishes that it is of vegetable origin, is natural, uncompounded, and not edible, and that it does not contain alcohol. It therefore responds to the statutory definition of the term "drug," and meets all of the other requirements as to origin, etc., to entitle it to classification under one or the other of the drug provisions found in paragraph 34 or 1669 of the act. Whether it would be dutiable or free under those provisions would depend upon whether it was in an advanced or crude condition at the time of importation. This factor, however, is not of importance at this point; it is sufficient for the moment that the record establishes that it is classifiable under the drug provisions of the tariff act.

Assuming that the merchandise is also classifiable under the provision in paragraph 53 of the act for expressed or extracted oils, not specially provided for, as assessed by the collector, we are of the opinion that the eligibility of the imported oil to be classified under the drug provisions negatives the classification of the collector under paragraph 53. Whether the provision for expressed or extracted oils, not specially provided for, be regarded as one of general description or the equivalent of an *eo nomine* designation of every expressed or extracted oil, not otherwise specially provided for, nevertheless, under the well-established rules of relative specificity, the drug provisions, which cover articles according to the use to which they are put, i. e., are designations by use, must prevail over either provisions of general description or *eo nomine* designations, nothing showing a contrary legislative intent appearing. See *Sherka Chemical Co., Inc.* v. *United States*, 33 C. C. P. A. 53, C. A. D. 316, at page 59, and *Geo. S. Bush & Co., Inc.* v. *United States*, 32 C. C. P. A. 56, C. A. D. 285, at page 61.

Under this reasoning, the provisions for drugs must also take pre-

cedence over the provision in paragraph 1732 for nut oils, not specially provided for, under which plaintiff makes alternative claim.

As has been noted hereinbefore, defendant claims that if the collector's classification of the merchandise under paragraph 53 be found to be erroneous—and we have held that it is—then it is contended that the merchandise is properly classifiable under the provision in paragraph 5 of the tariff act for medicinal preparations, not specially provided for. On the present state of the law, however, it is unnecessary to determine whether, as imported, the chaulmoogra oil in question was classifiable under the provision for medicinal preparations as found in paragraph 5. If it was so classifiable, then the result would be that the merchandise was equally classifiable under the drug provisions and under the medicinal preparations provision in paragraph 5. Under the rule laid down in the case of *Roche-Organon, Inc.* v. *United States*, 35 C. C. P. A. 99, C. A. D. 378, in such a case the drug provisions must be held to be more definite and specific in their application to the substance involved than the medicinal preparations provision.

In that case the appellate court said:

It is our view that "medicinal preparations" as used in paragraph 5, *supra*, is a generic term. It includes drugs as the latter term is legislatively defined, but it is broader in scope than drugs, just as in the *Fink* case, *supra* [*Fink* v. *United States*, 170 U. S. 584], it was narrower in scope than chemical salts. The Supreme Court defined chemical salts as a "genus" containing medicinal preparations "within itself" as a "species," and held the tariff provision for the species to be more definite than that for the genus. In the instant case we regard "medicinal preparations" as being the genus and "drugs" as being the species.

See also in this connection the decision of the first division of this court in the case of *G. D. Searle & Co.* v. *United States*, 21 Cust. Ct. 112, C. D. 1138.

Of course, if the chaulmoogra oil in question is not classifiable under the medicinal preparations provision, its classification status under the drug provisions is without competition.

Our remaining concern, therefore, is to determine whether the imported substance is a crude drug or an advanced drug within the meaning of the provisions of paragraphs 1669 and 34 of the act. It is the plaintiff's contention that chaulmoogra oil in the condition in which imported is the crudest form of the drug. On the other hand, it is the defendant's contention that the seeds which contain the oil are the crudest form of the drug.

The testimony given by plaintiff's witness Kellersberger as to the production of chaulmoogra oil such as that here involved indicates that it is extracted from *ripe* seeds. It also indicates that the ripe seeds are dried under cool and dry conditions for a comparatively short period of time, expressed by the witness as "several days"

(R. p. 18), and as "at least for a week or two, or longer" (R. p. 24). This testimony tends to indicate that the seed is not an article of commerce, while the oil is. It is supported by reference to the United States Pharmacopoeia, Twelfth Revision (U. S. P. XII), wherein, under the description of "Oleum Chaulmoogra Oil," the following is stated:

Chaulmoogra Oil is the fixed oil expressed from the ripe seed of *Taraktogenos Kurzii* King, *Hydnocarpus Wightiana* Blume, or *Hydnocarpus anthelmintica* Pierre (Fam. *Flacourtiaceae*). The fixed oil expressed from the ripe seed of other species of *Hydnocarpus* (Fam. *Flacourtiaceae*), when designated as such and when conforming to the description and physical properties and meeting the requirements of the tests prescribed below, may be used.

We are satisfied from the record as made that the plaintiff has established *prima facie* that the chaulmoogra oil as imported is the crudest form of the drug known to commerce, and that in such form it has not been advanced in value or condition by any process or treatment whatever beyond that essential to the proper packing of the oil and the prevention of decay or deterioration pending manufacture. The burden of going forward with the evidence on this point was upon the defendant, and that burden was not assumed at the trial.

On the record before us we therefore hold that the chaulmoogra oil in question is properly entitled to free entry under the provisions of paragraph 1669 of the Tariff Act of 1930 as a crude drug. That claim in the protest is sustained and judgment will issue accordingly.