UNITED STATES *v.* MAGNUS, MABEE & REYNARD, INC. (No. 4662)[1]

United States Court of Customs and Patent Appeals, May 8, 1951

[1] C. A. D. 455.

*David N. Edelstein*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.

*Eugene R. Pickrell* for appellee.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

GARRETT, Chief Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, entered in conformity with its decision, C. D. 1260, 25 Cust. Ct. 37, holding certain chaulmoogra oil imported from India, which had been classified by the Collector of Customs at the port of New York under paragraph 53 of the Tariff Act of 1930 and assessed with duty at the rate of 20 per centum ad valorem, entitled to entry free of duty as a crude drug classifiable under paragraph 1669 of the act, which reads:

PAR. 1669. Drugs such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, herbs, leaves, lichens, mosses, logs, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds, and all other drugs of vegetable or animal origin; all the foregoing which are natural and uncompounded drugs and not edible, and not specially provided for, and are in a crude state, not advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture: *Provided*, That no article containing alcohol shall be admitted free of duty under this paragraph.

The phraseology of paragraph 53, which the collector seemingly deemed applicable in view of the appraiser's description of the merchandise made in compliance with the statute (500 (a) of the Tariff Act of 1930) and pertinent regulations, reads:

PAR. 53. Oils, vegetable: * * * all other expressed or extracted oils, not specially provided for, 20 per centum ad valorem.

With respect to the claims of the importer as made before the trial court, we quote the following from its decision:

* * * Three alternative claims are made in the protest filed by the plaintiff. The claim principally relied upon is for free entry under the provisions of paragraph 1669 of the same act for crude drugs. The first alternative claim is for free entry under paragraph 1732 of the act as a nut oil, not specially provided for, and the second alternative claim is for duty at the rate of 10 per centum ad valorem under the provisions in paragraph 34 of the act as a drug, advanced.

In the protest conditional alternative claims were made under paragraphs 1558 and 1559, respectively, but they do not appear to have been presented before the trial court. There is no reference to them in the assignments of error accompanying the appeal to us.

Relative to the claims presented to the trial court on behalf of the Government, the court's decision states:

* * * While the classification made by the collector [under paragraph 53, *supra*] is not specifically abandoned by the defendant [the Government], nevertheless, the position assumed at the trial and in the brief filed on its behalf is directed toward classification of the merchandise under the provision in paragraph 5 of the said act for medicinal preparations, not specially provided for, with consequent assessment of duty at the rate of 25 per centum ad valorem.[1]

The claim so made on behalf of the Government that the merchandise be held classifiable under paragraph 5 of the Tariff Act of 1930—a paragraph which does not appear to have been invoked theretofore by either party to the proceeding—was discussed and decided by the trial court as follows:

As has been noted hereinbefore, defendant claims that if the collector's classification of the merchandise under paragraph 53 be found to be erroneous—and we have held that it is—then it is contended that the merchandise is properly classifiable under the provision in paragraph 5 of the tariff act for medicinal preparations, not specially provided for. On the present state of the law, however, it is unnecessary to determine whether, as imported, the chaulmoogra oil in question was classifiable under the provision for medicinal preparations as found in paragraph 5. If it was so classifiable, then the result would be that the merchandise was equally classifiable under the drug provisions and under the medicinal preparations provision in paragraph 5. Under the rule laid down in the case of *Roche-Organon, Inc.* v. *United States*, 35 C. C. P. A. [Customs] 99, C. A. D. 378, in such case the drug provisions must be held to be more definite and specific in their application to the substance involved than the medicinal preparations provision.

The trial court cited also its decision in the case of *G. D. Searle & Co.* v. *United States*, 21 Cust. Ct. 112, C. D. 1138.

With the appeal to us no error is assigned on behalf of the Government respecting the trial court's holding that the merchandise is not classifiable as a medicinal preparation. So, no further attention to that claim is required of us, but it may be said that the trial court's decision of that issue obviously is in harmony with the holding of this court in the *Roche-Organon* case, *supra*, which it cites.

The claims in the protest of the importer additional to those hereinbefore stated were (a) for classification under paragraph 34 at a duty rate of 10 per centum ad valorem, or (b) for classification, with free entry, under the provision of paragraph 1732, for "oils, expressed or extracted: * * * and nut oils not specially provided for."

The latter claim—that is, the claim under paragraph 1732—seemingly was not pressed before the trial court and no reliance whatever is placed upon it before us. So, no consideration of it by us is required.

---

[1] The particular phraseology of paragraph 5 relied upon below by the Government reads:

PAR. 5. * * * all medicinal preparations * * * all the foregoing obtained naturally or artificially and not specially provided for, 25 per centum ad valorem.

Paragraph 34 reads:

PAR. 34. Drugs, such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, herbs, leaves, lichens, mosses, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds, and all other drugs of vegetable or animal origin; any of the foregoing which are natural and uncompounded drugs and not edible, and not specially provided for, but which are advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture, 10 per centum ad valorem: *Provided*, That the term "drug" wherever used in this Act shall include only those substances having therapeutic or medicinal properties and chiefly used for medicinal purposes: *And provided further*, That no article containing alcohol shall be classified for duty under this paragraph.

The assignment of errors accompanying the Government's appeal to us alleges error on the part of the trial court:

3. In not finding that the imported articles were drugs, advanced in value and condition.

4. In not holding that as such, the imported oil was described and provided for in paragraph 34, Tariff Act of 1930, and was dutiable thereunder at 10 per centum ad valorem.

5. In not finding and holding, in the alternative, that the imported oil was described and provided for in paragraph 53 as an expressed or extracted vegetable oil, and was dutiable thereunder at 20 per centum ad valorem.

All other material allegations of error are directed to the claims that the merchandise is classifiable as a drug advanced under paragraph 34, *supra*, rather than as a crude drug under paragraph 1669, *supra*, and no further reference is made to the collector's classification under paragraph 53, *supra*.

The brief on behalf of the Government, however, states:

It is not disputed that the imported chaulmoogra oil has therapeutic properties and is therefore a drug under the statutory definition of that term found in paragraph 34, *supra*. It can be safely assumed that the classification for "drugs" is more specific than the general provision in paragraph 53 for expressed or extracted oils of vegetable origin. If the court interprets the law in this manner there will be no occasion to consider whether the merchandise is an expressed oil of vegetable origin within the purview of paragraph 53. In that case, the fundamental question here is whether this merchandise is a *crude* drug, within the intendment of paragraph 1669, and has not been advanced in value or condition beyond the process necessary to preservation and the prevention of decay, as appellee contends, or whether, as appellant contends, the imported oil is an *advanced* drug and as such is classifiable under paragraph 34 and excluded from the free entry provisions of paragraph 1669. [Italics quoted.]

It is obvious from the foregoing statement, particularly from the sentence reading, "It can be safely assumed that the classification for 'drugs' is more specific than the general provision in paragraph 53 for expressed or extracted oils of vegetable origin," constitutes an abandonment of any defense of the collector's classification.

So, as the case has been presented before us, we are confronted with a somewhat unusual situation.

Counsel for the Government have abandoned defense of the collector's classification under paragraph 53, *supra*, and also have abandoned the claim advanced for the first time before the trial court for classification as a medicinal preparation under paragraph 5, *supra*.

Their contention before us is that the merchandise properly is classifiable under paragraph 34, *supra*, which was one of the alternative claims in the protest of the importer.

The importer, however, has abandoned the alternative claim under paragraph 34, *supra*, and all other of its protest claims, except that upheld by the trial court for free entry under paragraph 1669, *supra*, which was itself alternative to the subsequently abandoned claim for classification under paragraph 1732, *supra*.

From all the foregoing it may be seen that the issue before us is limited to a consideration of the respective paragraphs 34 and 1669, both quoted *supra*.

In paragraph 34, *supra*, Congress made clear what it intended should be covered by the term "drug," for tariff purposes, by the legislative definition reading:

* * * Provided, That the term "drug" *wherever used in this Act* shall include only those substances having therapeutic or medicinal properties and chiefly used for medicinal purposes: * * *. [Italics supplied by us.]

Since the definition extends to the entire act, of course, it is applicable to paragraph 1669, *supra*, as well as to paragraph 34, *supra*. Both of those are expressly designated "drug" paragraphs.

The merchandise, classification of which for tariff purposes is at issue, is shown to be used in the treatment of leprosy, and it is agreed that upon the record here presented, it has therapeutic or medicinal properties and that it is chiefly used for medicinal purposes.

It therefore falls within the legislative definition of "drug."

The fundamental distinction between the applicability of paragraph 34, *supra*, and paragraph 1669, *supra*, must be determined from the status or condition of a drug at the time of its importation.

If the drug be in a *"crude state not advanced in value or condition"* [italics ours] by processes explicitly defined in the respective paragraphs or by "any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration *pending manufacture*," [italics ours] it is classifiable under paragraph 1669, *supra*.

On the other hand, if the drug be advanced in value or condition by the explicitly defined processes or by any other process or treatment whatever beyond that essential to the proper packing and the prevention of decay or deterioration pending manufacture, it may not

be regarded as being in a "crude state" and is classifiable under paragraph 34, *supra*.

The correctness of the findings of fact upon which the trial court predicated its decision as to the applicability of paragraph 1669, *supra*, is not contested by the Government, and we here quote from the court's decision:

There does not seem to be any question with respect to the facts as to the production of the involved chaulmoogra oil. According to the uncontradicted testimony of plaintiff's witness Kellersberger, a missionary and doctor of medicine with considerable experience on the subject, the chaulmoogra oil tree bears about 100 to 200 large, heavy, brownish fruits about the size of a grapefruit. Inside the skin or hull of the fruit is found a white pulp in which are embedded from 100 to 200 angular seeds. According to the witness, the seeds are first dried for at least a week or two, or longer, and then are cracked to get the kernel inside. The kernel is macerated and the oil extracted by means of a press, resulting in a crude, heavy oil, not a clear oil, but an oil which is partly cloudy. The witness stated that the oil so produced was similar to a sample of oil later received in evidence without objection as exhibit 2 and identified as chaulmoogra oil in all material respects the same as the imported oil.

The record establishes that because of impurities contained therein which would be deleterious to the patients, the crude oil in the form in which imported cannot be used in any manner in the treatment of leprosy until it has been purified, which is done by heating it to make it uniform in consistency and then filtering it. After such process in this country, the oil here in question conformed to United States Pharmacopoeia standards.

The record likewise establishes that there are four methods of using chaulmoogra oil in the treatment of leprosy. The first method is orally in the form of capsules of specific sizes which are filled with nothing but the purified oil. The second is by intramuscular injection. Since such injection of the purified oil alone is extremely painful and irritating, an analgesic—benzocaine—is dissolved in it. About 10 per centum of olive oil is used to aid the dissolution of the benzocaine. It was established that neither the olive oil nor the benzocaine add to or take away any of the medicinal or therapeutic properties of the chaulmoogra oil, but merely allay the pain incident to the method of injection.

The third method is with the use of ethyl esters of the oil. There is little elaboration in the record concerning this method of treatment, which obviously involves a change in the form of the oil.

The fourth method is by the preparation of an ointment by mixing the purified chaulmoogra oil with vasoline or lanolin. It was established that the vasoline or lanolin in such use does not add to the therapeutic value of the oil.

\*     \*     \*     \*     \*     \*     \*

The testimony given by plaintiff's witness Kellersberger as to the production of chaulmoogra oil such as that here involved indicates that it is extracted from *ripe* [italics quoted] seeds. It also indicates that the ripe seeds are dried under cool and dry conditions for a comparatively short period of time, expressed by the witness as "several days," and as "at least for a week or two, or longer." This testimony tends to indicate that the seed is not an article of commerce, while the oil is. It is supported by reference to the United States Pharmacopoeia Twelfth Revision (U. S. P. XII), wherein, under the description of "Oleum Chaulmoogra Oil," the following is stated:

Chaulmoogra Oil is the fixed oil expressed from the ripe seed of *Taraktogenos Kurzii* King, *Hydnocarpus Wightiana* Blume, or *Hydnocarpus anthelmintica*

Pierre (Fam. *Flacourtiaceae*). The fixed oil expressed from the ripe seed of other species of *Hydnocarpus* (Fam. *Flacourtiaceae*), when designated as such and when conforming to the description and physical properties and meeting the requirements of the tests prescribed below, may be used.

The contention on the part of counsel for the Government, as we understand it, is that because the therapeutic element was present in the seeds they constituted the crude drug intended by the Congress to be classifiable under paragraph 1669, *supra*.

In the brief on behalf of the Government it is said:

It is settled law that the collector is presumed to find every fact necessary to his classification. It is asserted by appellee and conceded by appellant that the classification in paragraph 1669 for drugs, being a designation by use, is a more specific tariff category than the *eo nomine* provision in paragraph 53 under which this merchandise was classified. Therefore, the classification under paragraph 53 involves a legal presumption that this merchandise is not a crude drug. The burden was on plaintiff below to prove otherwise.

Counsel for the Government thus seek to have the sound and necessary rule respecting the presumption of correctness which attaches to a classification by the collector applied to a classification which, so far as the record shows, the collector never even thought of making.

The idea expressed in the concluding sentences to the effect that the collector's classification under paragraph 53 involves a legal presumption that the merchandise is not a crude drug and that the burden was on the importer to prove otherwise is novel to say the least of it.

We are unable to discern how the classification under paragraph 53, *supra*, presents *a legal presumption* that the merchandise is *not* a *crude* drug, within the meaning of paragraph 1669, *supra*, but at the same time presents a legal presumption that it was an advanced drug, within the meaning of paragraph 34, *supra*.

It is our opinion that when the collector's classification was found to have been erroneously made—and, as hereinbefore has been stated, it is conceded by counsel for the Government that it was erroneously made—all legal presumption as to its correctness fell. The importer had no longer the burden of overcoming that presumption. However, it did have the burden of showing a factual and legal situation which would enable the courts to determine whether any one—and if so, which one—of the claims of its protest should be sustained. In the effort to meet that burden the importer introduced evidence which led the trial court to conclude:

We are satisfied from the record as made that the plaintiff [appellee here] has establish[ed] *prima facie* that the chaulmoogra oil as imported is the crudest form of the drug known to commerce, and that in such form it has not been advanced in value or condition by any process or treatment whatever beyond that essential to the proper packing of the oil and the prevention of decay or deterioriation pending manufacture. The burden of going forward with the evidence on this point was upon the defendant [appellant here], and that burden was not assumed at the trial.

We agree with the trial court that the importer established the *prima facie* case recited and that the burden was shifted to the Government to overcome such *prima facie* case, and that it failed to do so. The judgment of the United States Customs Court is *affirmed*.